UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **MEDALOGIX, LLC,** | ) | |
| | ) | |
| **Plaintiff/Counter-Defendant,** | ) | |
| | ) | |
| **v.** | ) | **No: 3:15-00472** |
| | ) | **Judge Sharp** |
| **ALACARE HOME HEALTH** | ) | |
| **SERVICES, INC.,** | ) | |
| | ) | |
| **Defendant/Counter-Plaintiff.** | ) | |

**<u>MEMORANDUM</u>**

In this diversity action, Defendant/Counter-Plaintiff Alacare Home Health Services, Inc. ("Alacare") has filed a Motion to Transfer Venue (Docket No. 17), which Plaintiff/Counter-Defendant Medalogix, Inc. ("Medalogix") opposes (Docket No. 18).  For the reasons that follow, the Motion to Transfer will be granted.

**I.  <u>Factual Allegations</u>**

Based upon the parties' filings, the relevant factual allegations are as follows:

Medalogix is a Delaware limited liability company with its principal executive office in Nashville, Tennessee.  It is a "health data analytics firm" that "specializes in creating predictive analytic software and tools designed to assist home health care providers in identifying and managing patients for whom hospice care is appropriate and in deploying clinical resources so as to reduce hospital admissions among their patients."  (Docket No. 1, Complaint ¶ 6).  Towards that end, Medalogix has developed two software products that it markets and sells to clients:

> The "Bridge" product uses predictive analytics to help home health care providers identify more quickly and accurately those patients who are ready for transfer to hospice care, which commands higher reimbursement rates from payors than do

1

ordinary home health care services. The "Touch" product uses predictive analytics to help home health care providers identify those patients who have the highest probability of needing inpatient care so that the provider can allocate the clinical resources necessary to avoid such admissions, if possible.

(Id. ¶ 7).  Both products are designed to increase revenue for providers and afford the most appropriate level of care for patients.

Alacare provides home health care and hospice services to patients throughout Alabama. In January 2013, Alacare entered into a Services Agreement with Medalogix.  That same day, the parties also entered into a Business Associate Agreement.

Medilogix claims that, pursuant to the Services Agreement, Alcare agreed to provide access to historical patient data and other information.  Based on this information, Medilogix then developed or enhanced its Bridge and Touch products for use by Alacare.

Apparently, things went well for a while and, in October 2013, the parties entered into an amended Services Agreement.  That agreement, Medalogix claims, allowed Alacare free use of its products in exchange for Medalogix's continued access to historical patient data and other information. Alacare also allegedly agreed to help Medalogix market and sell the Bridge and Touch products to other providers in exchange for commissions.

Sometime towards the end of 2014, the relationship betweem the parties soured.  Medalogix claims that "Alacare suddenly began demanding additional compensation from Medalogix for the information and services it had provided . . . during the development of the Bridge and Touch products," and what "began as a request for perpetual free use of those products," turned into a demand for "a substantial, non-dilutable equity ownership interest in the company."  (Id. ¶ 14).

By way of this suit, Medalogix requests declaratory relief.  Specifically, it asks the Court declare that:

a.  The patient records, patient  assessments, patient record format, hospice referral and admission procedures and other information provided by Alacare to Medalogix in connection with the development  and enhancement of the Bridge and Touch products (collectively, the "Alacare Information") do not  constitute "trade secrets" or information that is otherwise proprietary to Alacare;

b.  Medalogix  did not improperly disclose, misappropriate or otherwise misuse the Alacare Information by using it to develop the predictive functionality contained in the Bridge and Touch products;

c. By entering into the Addendum to the Services Agreement  after the Bridge and Touch products had been developed and both parties had knowledge of their contents and functionality, Alacare consented to and/or licensed Medalogix's use of any Alacare Information contained in the Software; and

d. By endorsing, marketing and selling the Bridge and Touch products in the marketplace, Alacare has consented to and/or licensed Medalogix's use of any Alacare Information contained in the Software and waived and/or is estopped from asserting any claim for misappropriation of the Alacare Information.

(Id. ¶ 27).

Alacare has filed an Answer and Counter-Complaint.  In its Counter-Complaint, Alacare alleges that it is relatively unique in the healthcare industry because it provides both healthcare and hospice services and that, based upon many years of experience, it knows when to move a patient from regular home health care to hospice care.   Alacare claims its

know-how and proprietary expertise has been captured in a confidential and proprietary patient database . . . spanning patient data from 2006 to the present. The patient database includes but is not limited to Protected Health Information ("PHI") and is guarded by security systems to maintain its secrecy. The arrangement and sequencing of patient data in the patient database is proprietary to Alacare and is protected by Copyright Registration No. TXu001937973.

(Docket No. 16, Counter-Complaint ¶ 8).  In addition, Alacare claims to have developed proprietary systems to assess and assist a patient in transitioning from a home healthcare environment to a hospice environment which it refers to as the "Alacare Hospice Transition Model."

Alacare acknowledges that the parties entered into the Business Associate Agreement, a

Services Agreement, and an Addendum, but claims that none of the agreements provided Medalogix with any ownership interest in Alacare's PHI.  Alacare contends that "[i]n 2013, Medalogix had absolutely no experience with hospice patients, but it quickly realized that, through its access to 'known patient outcomes' in the Alacare Database," and through the enlistment of help from service level employees at Alacare, Medalogix "had a unique opportunity to develop analytic rules[.]"  (Id. ¶¶ 31-33).  Alacare asserts that the information Medalogix received was beyond that which was "reasonably required" to perform services under the agreements between the parties.  (Id. ¶ 35). Moreover, when the "Addendum was executed, Medalogix failed to disclose to Alacare the extent of IP [intellectual property] taken from Alacare and incorporated into the Medalogix software programs," and "likewise failed to disclose its intent to incorporate Alacare's IP into its software programs in perpetuity without a license or permission from Alacare."  (Id. ¶ 43).

Alacare contends "[i]t has now become clear that significant IP, PHI, and Proprietary information belonging to Alacare – information that was not required for Medalogix to perform its services under the Agreement – was incorporated by Medalogix into its software products and sold to the general public."  (Id. ¶ 44).  It brings claims under Alabama law for breach of contract, violation of the Trade Secrets Act, unlawful trade practices, conversion, unjust enrichment, and fraudulent suppression.  Alacare seeks both money damages and injunctive relief.

## II. <u>Discussion</u>

Alacare moves to transfer this case based upon a forum selection clause contained in the Business Associate Agreement.  Section 13 of that Agreement provides:

> **Section 13. Governing Law and Venue**. This BA Agreement shall be governed by, and interpreted in accordance with, the Privacy Rules and Security Rules and the internal laws of the State of Alabama, without giving effect to any conflict of laws provisions.  Any action at law, suit in equity, or other judicial proceeding for the

4

enforcement of this BA Agreement, or any provision hereof, shall take place in the State of Alabama in the County in which Covered Entity has his/her/its place of business. Business Associate hereby consents to the personal jurisdiction of the state and federal courts in such County, in any dispute arising from or related to this BA Agreement.

(Docket No. 1-1 at 24).  Since Alacare is the covered entity and has its principal place of business in Birmingham, Alabama, Alacare request that this case be transferred to the Northern District of Alabama.

"[F]ederal law, specifically 28 U.S.C. § 1404(a), governs [a] District Court's decision whether to give effect to the parties' forum-selection clause and transfer [a] case[.]" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 32 (1988).  That section provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).

With regard to Section 1404(a), the Supreme Court in Atl. Marine Const. Constr. v. U.S. Dist. Court for W. Dist. of Texas observed:

> In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a forum *non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations. Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice.". . . The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum. . .  The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."

134 S. Ct. 568, 581 (2013) (internal citations omitted).  The Court went on to explain that "[t]he

presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways": "First, the plaintiff's choice of forum merits no weight"; "[s]econd, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests"; and "[t]hird, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules – a factor that in some circumstances may affect public-interest considerations." Id. at 581-82.  In short, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause," and "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." Id. at 581.

Medalogix does not dispute the existence of the forum selection clause or its validity.  Nor does it claim that venue would not be proper in the Northern District of Alabama.  Rather, its argument is that the forum selection clause "is, quite simply, a red herring," and "provides no basis to transfer this case."  (Docket No. 18 at 2).  Medalogix argues

> this is a dispute over the creation of two software programs—the "Bridge" and "Touch" products—and, specifically, whether Plaintiff Medalogix, LLC ("Medalogix") breached the parties' Services Agreement when it used information that Alacare provided to design and build those programs. The Services Agreement, therefore, is central to this case, and it is out of the Services Agreement that the parties' claims arise.

(Id. at 1).  It claims, "[t]he genesis of this lawsuit is a dispute over Medalogix's rights under the Services Agreement, as opposed to the ancillary Business Associate Agreement," because the Services Agreement "set forth what information Alacare would provide and how Medalogix would use it," while the Business Agreement was "intended to facilitate Alacare's provision of information to Medalogix as contemplated in the Services Agreement."  (Id. at 3).  For two reasons, the Court

is unpersuaded by these argument.

First, a fair review of the pleadings indicates that more than the Services Agreement is implicated. A core issue appears to be whether Medalogix improperly obtained and used Alacare's intelectual property which Alacare contends consists of certain PHI which is covered by the disclosure and use pro visions of the Business Agreement.

Among other things, Medalogix has requested a declaration as to whether "patient records, patient assessments, patient record format, hospice referral and admission procedures and other information provided by Alacare to Medalogix in connection with the development and enhancement of the Bridge and Touch products . . . constitute 'trade secrets'" or information that is otherwise proprietary to Alacare," and whether "Alacare consented to and/or licensed Medalogix's use of any Alacare Information contained in the Software." (Docket No. 1,Complaint ¶ 27). In turn, the focus of Alacare's Counter-Complaint centers on whether Medalogix has misappropriated its intellectual property, PHI and other information governed by the Business Agreement.

Second, the Business Agreement, executed the same day as the Services Agreement, states that it is to "be construed as broadly as necessary to comply with the Privacy and Security Rules." (Docket No. 1-1 at 23). More fundamentally, the Business Agreement specifically states that it "supplements and is made a part of th[e] Service Agreement, to include amendments and addendums thereto[,]" (id.), suggesting that the forum selection clause applies to the Service Agreement and Addendum in this case.

Medalogix's reliance on paragraphs 11 and 22 of the Settlement Agreement is misplaced. In paragraph 11, the parties "acknowledge that a breach of the obligations of confidential . . . would

cause irreparable injury, and agree that "[a] party may seek . . . temporary or preliminary injunctive relief in a court of competent jurisdiction in Davidson County, Tennessee to retrain a violation of the confidentiality obligations." But this language is merely permissive, whereas the selection forum clause of the Business Agreement mandates that disputes related to its enforcement be heard in Alabama.  See, Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 17 (1st Cir. 2009) ("Permissive forum selection clauses, often described as consent to jurisdiction clauses, authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere"); Flight Sols, Inc. v. Club Air, Inc., 2010 WL 276094, at *3 (M.D. Tenn. Jan. 14, 2010) (citation omitted) (noting that, unlike a mandatory selection clause, "[a] permissive forum-selection clause "authorize[s] jurisdiction in a designated forum, but do[es] not prohibit litigation elsewhere," and "the parties are not bound to bring suit in the designated forum'"). Besides, the parties are not seeking a temporary or preliminary injunction in this action.

In paragraph 22, the parties agreed that disputes involving the Services Agreement "shall be governed by, and construed in accordance with, the laws of the State of Tennessee without giving effect to choice of law principles." (Docket No. 1-1 at 22). While Medalogix quotes the Supreme Court's decision in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 510 (1947) for the proposition that [t]here is a local interest in having localized controversies decided at home [and] in having the trial of a diversity case in a forum that is at home with the state law that must govern the case," the Supreme Court made that observation in the context of discussing the public interest factor under the doctrine of forum non conveniens. As noted, however, the calculus changes when there exists a valid forum selection clause.

Finally, Medalogix argues that Plaintiff has not shown that the Section 1404(a) factors favor

transfer and, in fact, the balance of those factors "weighs heavily against transfer. Under <u>Atlantic Marine</u>, however, those factors have little or no weight.

Medalogix, as "[t]he party opposing the forum selection clause[,] bears the burden of showing that the clause should not be enforced." <u>Wong v. PartyGaming Ltd.</u>, 589 F.3d 821, 828 (6th Cir. 2009). It has not carried that burden, and it certainly has not shown "extraordinary circumstances unrelated to the convenience of the parties," <u>Atl. Marine</u>, 134 S. Ct. 582, that would warrant denial of the request for transfer.

### III.  Conclusion

On the basis of the foregoing, Alacare's Motion to Transfer will be granted. An appropriate Order will enter.

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE